**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANTHONY WAYNE GIBSON,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | **CIVIL ACTION NO. 3:18-CV-2319** |
| **v.** | : | |
| | : | **(Judge Caputo)** |
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **Defendants** | : | |

**M E M O R A N D U M**

Presently before the Court is Mr. Gibson's letter-request for appointment of counsel (ECF No. 16).  The Court will construe Plaintiff's letter-request as a motion for appointment of counsel.

For the following reasons, the Court will deny the motion without prejudice.

**I.      Background**

Mr. Gibson commenced this suit on November 14, 2018, asserting claims against the Defendant United States of America under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 *et seq.*  (ECF No. 1.)

On November 27, 2016, while housed in the Special Management Unit (SMU) at the Lewisburg United States Penitentiary (USP Lewisburg), in Lewisburg, Pennsylvania, Mr. Gibson ate food tainted with salmonella bacteria.  On November 30, 2016, after experiencing days of continuous vomiting, diarrhea and abdominal pain, prison officials took Mr. Gibson to the medical unit where he received intravenous treatment and an x-ray to rule out a bowel obstruction.  After reading the ambiguous x-ray results, a physician sent

Mr. Gibson to the Evangelical Community Hospital. Upon his arrival at the Emergency Unit he received additional intravenous medication and an MRI. The MRI was negative for a bowel obstruction. After hospital staff considered Mr. Gibson's possible exposure to salmonella, the physician advised Plaintiff he was suffering from acute renal failure due to dehydration. Mr. Gibson's treating physician discharged him on December 3, 2016 to the care of USP Lewisburg. Plaintiff returned to USP Lewisburg's Special Housing Unit (SHU), the area used to quarantine inmates suffering from symptoms of salmonella poisoning. Mr. Gibson continued to suffer gastrointestinal distress after December 9, 2016, the day he returned to his SMU cell. Mr. Gibson seeks actual or compensatory damages for his injuries.

## II.    Discussion

Although prisoners have no constitutional or statutory right to appointment of counsel in a civil case, the Court has discretion to "request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1); *see also Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002); *Parham v. Johnson*, 126 F.3d 454, 456 – 57 (3d Cir. 1997); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993). "Appointing counsel for an indigent civil litigant is 'usually only granted upon a showing of *special circumstances* indicating the likelihood of substantial prejudice to him resulting, for example, from his probable inability without such assistance to present facts and legal issues to the court in a complex but arguably meritorious case.'" *Parkell v. Danberg*, 833 F.3d 313, 340 (3d Cir. 2016) (quoting *Smith-Bey v. Petsock*, 741 F.2d 22, 26 (3d Cir. 1984)) (emphasis in original).

"[V]olunteer lawyer time is a precious commodity[,]" *Montgomery*, 294 F.3d at 499, so the decision to recruit counsel for an indigent prisoner should be exercised "discerningly." *Id.* at 505 n. 10. The Third Circuit Court of Appeals has provided guidance for the exercise of the district court's discretion in this regard. At the threshold, the Court must decide whether the plaintiff's case, "has some arguable merit in fact and law." *Id.* at 499. A court need not appoint counsel "if the indigent's chances of success on the merits are extremely slim." *Id.* at 500 (quoting *Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986)) (internal quotation marks and brackets omitted). If the threshold requirement is met, the Court then considers several factors to determine whether to request counsel for an indigent party. These factors include: (1) Plaintiff's ability to present his own case; (2) the difficulty of the particular legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation; (4) Plaintiff's capacity to retain counsel on his own behalf; (5) the extent to which a case is likely to turn on credibility determinations; and (6) whether the case will require testimony from expert witnesses. *Tabron*, 6 F.3d at 155 - 57. If the case "appears to have merit" and "most of the aforementioned [*Tabron*] factors have been met," the Third Circuit "instruct[s]" that the district court "should make every attempt to obtain counsel." *Montgomery*, 294 F.3d at 505 (quoting *Parham*, 126 F.3d at 461) (internal quotation marks omitted) (alteration in original).

To determine whether Plaintiff's case has some arguable merit in fact and law, the Court must examine the elements required to assert a FTCA claim. Under the FTCA, the Court must apply the law of the state in which the allegedly negligent act occurred. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 179 (3d Cir. 2000) (citing 28 U.S.C. § 1346(b)(1)). Here, the conduct at issue occurred in Pennsylvania; therefore, Pennsylvania

law governs this claim and requires Plaintiff to establish the following: (1) "a  duty  or obligation recognized by the law requiring the defendant to conform to a certain standard of conduct of the protection of others against unreasonable risks"; (2) "defendant's failure to conform to the standard required"; (3) "a causal connection between the conduct and the resulting injury"; and "(4) actual loss or damage resulting to the plaintiff." *R.W. v. Manzek*, 888 A.2d 740, 746 (Pa. 2006). As discussed above, Mr. Gibson alleges that prison officials failed to reasonable care in the storage and preparation of food served to him while housed at USP Lewisburg, resulting in his hospitalization for acute dehydration due to salmonella poisoning. Based on the allegations in the Complaint, the Court cannot say his claim is completely without merit. Thus, the Court must examine the *Tabron* factors.

The first *Tabron* factor, plaintiff's ability to present his own case, is "perhaps the most significant[.]" *Montgomery*, 294 F.3d at 501. In evaluating this first factor, courts should consider "the plaintiff's education, literacy, prior work experience, and prior litigation experience . . . plaintiff's ability to understand English . . . or, if the plaintiff is a prisoner, the restraints placed upon him or her by confinement." *Tabron*, 6 F.3d at 156. Here Mr. Gibson has shown he sufficiently understands court procedure and has been able to present a clear definition of his claim. Moreover, his request for counsel is unsupported by any impediment placed upon his access to legal research materials based on his incarceration. Additionally, the legal claims involved are not complex and will not require intensive or extensive discovery. Next, although Mr. Gibson proceeds *in forma pauperis*, and his is unable to hire counsel, he does not assert he independently attempted to obtain counsel without success prior to seeking Court appointed counsel in this matter. Lastly, though it is likely that credibility determinations may influence the outcome of the case, this

*Tabron* factor weighs in favor of appointing counsel only when "the case [is] solely a swearing contest [,]" which Plaintiff's claims do not appear to be.  *Parham*, 126 F.3d at 460.

Because "most of" the *Tabron* factors have not been met at this time, Mr. Gibson's motion to appoint counsel will be denied.  *Montgomery*, 294 F.3d at 505 (quoting *Parham*, 126 F.3d at 461) (internal quotation marks omitted) (alteration in original).

An appropriate order follows.

**Date:  May 8, 2019**                                /s/ A. Richard Caputo
                                                             **A. RICHARD CAPUTO**
                                                             **United States District Judge**